**Kenneth KIRSCHENBAUM, as Trustee for the Estate of EMS Financial Services, LLC, Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY, White Lines Com, LLC, Bruce Pollak and "JOHN DOE # 1" through "JOHN DOE # 10", defendants being unknown to Plaintiff, the parties intended being any party asserting a claim for coverage under Debtor's errors and omissions insurance policy (Policy Number 8223–2057) issued by Federal Insurance Company, Defendant.**

No. 13–cv–2405 (ADS) (WDW).

United States District Court,
E.D. New York.

Feb. 6, 2014.

Kirschenbaum & Kirschenbaum, P.C., Garden City, NY, By: Steven B. Sheinwald, Esq., of Counsel, for Plaintiff Kenneth Kirschenbaum, as Chapter 7 Trustee for the Estate of EMS Financial Services, LLC.

Tressler LLP, New York, NY, By: Courtney E. Scott, Esq., of Counsel, for Defendant Federal Insurance Company One Penn Plaza.

Podoll & Podoll, P.C., Greenwood Village, CO, By: Richard B. Podoll, Esq., Robert A. Kitsmiller, Esq., of counsel, for Defendant White Lines Com, LLC.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On March 6, 2012, the Debtor EMS Financial Services, LLC ("EMS" and the "Debtor") filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court in the Eastern District of New York before United States Bankruptcy Judge Alan S. Trust. On May 30, 2012, the Plaintiff Kenneth Kirschenbaum, Esq., the Chapter 7 Trustee for EMS (the "Trustee"), filed an adversary proceeding in the Bankruptcy Court against the Defendant Federal Insurance Company ("Federal") and other parties, including White Lines Com LLC ("White Lines"), an entity allegedly injured by EMS. The Trustee sought a declaration of the rights, duties, and liabilities of the parties under certain insurance policies.

On August 7, 2012, Federal moved this Court to withdraw the adversary proceeding. On April 19, 2013, this Court granted Federal's motion to withdraw the reference.

White Lines now seeks to amend its answer to assert cross claims against Federal, including a declaratory judgment as to, among other things, whether EMS, Federal's insured, is liable to White Lines for negligence in an amount in excess of $5,000,000. For the following reasons, the Court denies the motion to amend.

## I. BACKGROUND

### A. *The Policy*

On or about January 5, 2011, an insurance policy was issued to EMS by Federal under Policy Number 8223–2057 (the "Policy"). The Policy covered a one year period, from December 27, 2010 through December 27, 2011. The Policy was an errors and omissions policy, under which EMS and its officers, directors, and employees were insured for any loss resulting from a claim for wrongful acts committed by EMS or its agents. The Policy contained a $5,000,000 cap on any single claim and on all aggregate claims.

### B. *The Creditor Lawsuits*

Prior to the filing of EMS's bankruptcy petition, litigation had been commenced against the Debtor by White Lines and Bruce Pollak ("Pollak") (collectively, the "Creditors") in two separate proceedings: (1) *White Lines.Com, LLC, Plaintiff v. EMS Financial Services, LLC, et al., Defendants*, in the Supreme Court of the State of New York, County of New York, Index Number 653221/2011; and (2) *Bruce Pollak, Plaintiff v. EMS Financial Services, LLC, Defendant*, in the United States District Court for the Middle District of Pennsylvania, Case Number 11–cv–1969(YK) (collectively, the "Creditor Lawsuits"). Neither White Lines nor Pollak are named insureds under the Policy. Federal has undertaken the defense of EMS and retained counsel in the Creditor Lawsuits, subject to Federal's continued investigation and a full reservation of its rights under the Policy.

In each of the Creditor Lawsuits, the Creditors assert that funds given to EMS were improperly used. At the time of the bankruptcy filing, both Creditors had filed motions for a default judgment in their respective courts.

Subsequently, after the bankruptcy case began, the Creditors each filed a motion pursuant to 11 U.S.C. § 362 seeking an order to vacate the automatic stay so as to permit each of them to continue the prosecution of their respective lawsuits. The Bankruptcy Court lifted the automatic stay for the limited purpose of allowing the Creditors to adjudicate their respective motions for default judgment, and proceed to an inquest to determine the amount of their claims.

On October 5, 2012, the Supreme Court of the State of New York denied White Line's motion for a default judgment, and previously, on July 24, 2012, the United States District Court for the Middle District of Pennsylvania denied Pollak's motion for a default judgment.

In addition to Creditor Lawsuits, the Creditors each filed a proof of claim in the Bankruptcy Court proceeding. White Lines filed a proof of claim against EMS on March 22, 2012 in the sum of $7,840,643, and Pollak filed a proof of claim against EMS on June 5, 2012 in the sum of $1,325,000. The aggregate amount of the proofs of claim filed by White Lines and Pollak total $9,165,643.

C. *Procedural History of the Bankruptcy Proceeding and the Adversary Proceeding*

On or about May 30, 2012, the Trustee commenced an adversary proceeding in Bankruptcy Court against Federal (the "Adversary Proceeding"), White Lines, Pollak, and John Doe Defendants # 1–10. The Trustee seeks (1) a determination that Federal is obligated to indemnify EMS for the damages being sought by the Creditors, and (2) a declaration that Federal should turn over to the Trustee the full limits of liability under the Policy.

On August 6, 2012, in lieu of filing an Answer in the Bankruptcy Court, Federal filed a motion to dismiss the Trustee's Complaint on the grounds, among other things, that the Adversary Proceeding was not ripe or justiciable.

On August 7, 2012, Federal filed a motion in this Court to withdraw the Adversary Proceeding from the Bankruptcy Court.

On January 4, 2013, the Bankruptcy Court denied Federal's motion to dismiss the Trustee's Complaint. *Kirschenbaum v. Federal Ins. Co. (In re EMS Fin. Servs., LLC)*, 2013 WL 64755, 2013 Bankr.LEXIS 139 (Bankr.E.D.N.Y. Jan. 4, 2013). Of relevance here, the Bankruptcy Court held that "the ultimate issue of whether White Lines and Pollak are entitled to be paid on those claims, and if so, by whom, is premature at this juncture, because the Underlying Actions [including White Lines' state court action] have not yet been resolved by their respective courts." 2013 WL 64755, at *8. The Bankruptcy Court further held that "the Trustee's claim for turnover is premature at this stage because, as Federal points out, White Lines and Pollak have not established their right to payment from EMS, and EMS has not established its right to payment from the Policy." *Id.* However, the Bankruptcy Court abated the Adversary Proceeding pending adjudication or resolution of the Creditor Actions. The Bankruptcy Court invited White Lines, Pollak, or Federal to file proper motions for relief from the automatic stay pursuant to 11 U.S.C. 362(d) so as to prosecute the Creditor actions to judgment, but noted that enforcement of any judgment re-

quired the consent of the Bankruptcy Court.

White Lines subsequently moved before the Bankruptcy Court for relief from the automatic stay to enable to it proceed with the New York State court action. By order dated March 6, 2013, the Bankruptcy Court granted this relief. The Bankruptcy Court further granted Pollak's request for stay relief to file a motion for change of venue of its federal lawsuit from the United States District Court of the Middle District of Pennsylvania to the District of Rhode Island.

To date, no determination of liability or damages as against EMS has been made in the Creditor Lawsuits. No judgment has been entered in either case and no resolution of the Creditors' claims has been reached. White Lines represents that substantive discovery has not occurred in either case.

Meanwhile, on April 19, 2013, this Court granted Federal's motion to withdraw the Adversary Proceeding. *In re EMS Fin. Servs., LLC,* 491 B.R. 196 (E.D.N.Y.2013).

White Lines now moves to amend its answer to assert a cross claim for a judgment against Federal declaring, among other things, that EMS is liable to White Lines for negligence in an amount in excess of $5,000,000 and that such liability falls within the ambit of the Policy. Pollak has not indicated whether he opposes the motion to amend. However, the Trustee and Federal oppose the motion to amend, first contending that permitting White Lines to amend its answer in this regard would be futile because, under *Lang v. Hanover Ins. Co.,* 3 N.Y.3d 350, 787 N.Y.S.2d 211, 820 N.E.2d 855 (2004), White Lines lacks standing to bring a direct action against Federal until White Lines obtains a judgment against EMS. White Lines counters that, under *Maroney v. New York Cent. Mut. Fire Ins. Co.,* 5 N.Y.3d 467, 471, 805 N.Y.S.2d 533, 839 N.E.2d 886 (2005) and its progeny, an injured third-party party joined as a named defendant may pursue a declaratory judgment on coverage issues, notwithstanding the absence of a judgment against the insured.

The Trustee and Federal also note that, whereas Federal's defense costs in the state action erode the liability limit of the Policy, Federal is responsible for its own defense costs in the instant action. Therefore, Federal argues, it would suffer undue prejudice if the Court permitted White Lines to add its cross claims. White Lines counters that Second Circuit case law holds that the increased costs of litigation do not constitute sufficient prejudice justifying denying an amendment. White Lines further asserts that it would suffer undue prejudice by denial of the amendment because, as noted above, resolution of coverage issues in the state action would erode the limit of the liability limit of the Policy, and thus, deplete its own potential recovery.

Finally, the Trustee and Federal argue that permitting White Lines to add its cross claims would (1) constitute an end-run around the Bankruptcy Court automatic stay and order dated March 6, 2013 and (2) undermine judicial economy because the proposed cross claims encompass the same issues pending before the state court. White Lines responds by (1) pointing to cases in which an underlying proceeding between an injured party and insured was not viewed as an impediment to resolving coverage issues under the Federal Declaratory Judgment Act and (2) asserting that judicial economy would be served by resolving liability and coverage issues in one forum.

## II. DISCUSSION

A. *Legal Standard on Motion to Amend*

Federal Rule of Civil Procedure 15 applies to motions to amend the plead-

ings. A motion to amend "shall be freely granted when justice so requires." Fed. R.Civ.P. 15(a). Such a motion should be denied "only for reasons such as undue delay, bad faith, futility of the amendment or prejudice to the other party." *Crippen v. Town of Hempstead,* No. 07–CV–3478 (JFB)(ARL), 2013 WL 2322874, at *1 (E.D.N.Y. May 22, 2013); *see also Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 125 (2d Cir.2008) (per curiam) ("[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the nonmoving party."). "An amendment is considered futile if, for example, it could not defeat a motion to dismiss for failure to state a claim or for lack of subject matter jurisdiction." *Crippen,* 2013 WL 2322874, at *1 (citing *Chan v. Reno,* 916 F.Supp. 1289, 1302 (S.D.N.Y.1996)); *see also Absolute Activist Master Value Fund Ltd. v. Ficeto,* 677 F.3d 60, 71 (2d Cir.2012).

 "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) [of the Federal Rules of Civil Procedure] when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005). However, the court "must accept as true all material factual allegations in the complaint." *J.S. v. Attica Cent. Sch.,* 386 F.3d 107, 110 (2d Cir. 2004).

B. *Standing*

 A defendant may move for dismissal pursuant to Rule 12(b)(1) if a plaintiff lacks standing, a jurisdictional issue. *See*

*Carver v. City of New York,* 621 F.3d 221, 225 (2d Cir.2010) ("Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.'") (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); *Manigaulte v. C.W. Post of Long Island Univ.,* 659 F.Supp.2d 367, 378 (E.D.N.Y. 2009) ("As plaintiff does not have standing to bring a claim under Title III of the ADA on behalf of learning disabled students, an amendment allowing such a cause of action would be futile."); *see also Thabault v. Sorrell,* No. 1:07–CV–166, 2008 WL 3582743, at *2 (D.Vt. Aug. 13, 2008) (denying leave to re-plead or amend complaint when plaintiff lacked standing to assert proposed claim).

As noted above, Federal and the Trustee dispute White Line's standing to assert its proposed cross claims. In particular, Federal argues that White Lines has not satisfied the standing requirements of N.Y. Ins. Law § 3420 and *Lang* because White Lines has yet to establish liability against EMS. The question presented in *Lang* was whether and under what circumstances an injured party lacking privity to an insurance policy could bring a direct action against a tortfeasor's insurance company to recover under the policy. *See Lang,* 3 N.Y.3d at 352, 787 N.Y.S.2d 211, 820 N.E.2d 855. The New York Court of Appeals held that, pursuant to the plain language of § 3420(a)(2), the injured party must obtain and enter a judgment against the insured tortfeasor before bringing suit against the insurer. *Id.* Once such a judgment is obtained, "the injured party steps into the shoes of the tortfeasor and can assert any right of the tortfeasor-insured against the insurance company." *Id.* at 355, 787 N.Y.S.2d 211, 820 N.E.2d 855.

"However, the standing requirement is waived in this matter because [the Trustee] named the [White Lines] as [a] defen-

dant[ ] in the lawsuit; thus, 'as [a] party defendant[ ] in the action, [White Lines is] thereby allow[ed] ... to contest the issue of coverage anew in the instant case.'" *U.S. Underwriters Ins. Co. v. Zismopoulos,* 07–CV–4684 (CBA)(RLM), 2010 WL 1286221, at *2 (E.D.N.Y. Mar. 31, 2010), quoting *3405 Putnam Realty Corp. v. Insurance Corp. of N.Y.,* 2007 N.Y. Slip Op. 582, 36 A.D.3d 565, 565, 828 N.Y.S.2d 394, 395 (1st Dep't 2007); *see also Maroney,* 5 N.Y.3d at 471 n. 1, 805 N.Y.S.2d 533, 839 N.E.2d 886 (2005) ("Because the insurer joined the insured in seeking a declaration of its rights ... Insurance Law § 3420 does not preclude consideration of the coverage issues in this case"). In other words, "[Federal] cannot bring suit against [White Lines] and then later assert that [White Lines] do[es] not have standing in the matter." *Zismopoulos,* 2010 WL 1286221, at *2.

The reliance by Federal and the Trustee on *U.S. Underwriters Ins. Co. v. Ziering,* 06–CV1130 (JFB)(WDW), 2010 WL 3419666 (E.D.N.Y. Aug. 27, 2010) is misplaced. There, an insurer sued the insured and multiple other parties, including an allegedly injured third-party defendant. After the insurer and the insured settled and executed a stipulation of discontinuance, the third-party defendant moved to add claims against the insurer. The Court denied the motion, holding that any such claims would be futile because the third-party defendant had failed to first obtain a judgment in the underlying state court action against the insured. However, the Court made clear that if the third party defendant asserted new claims against the other parties in the case, she would become the plaintiff in that case, as the insurer was no longer a party to the action. *See id.* at *6.

Unlike in *Ziering,* here, the party seeking to amend its pleadings is a party-defendant, not a plaintiff. Accordingly, under *Maroney,* the Court finds that White Lines possesses standing to assert its cross claims, and, therefore, rejects the argument that White Lines' motion to amend should be denied as futile on this basis.

## C. *Prejudice and Judicial Economy*

■ That said, courts may also deny leave to amend if permitting such amendment would prejudice the other parties. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). To determine whether non-moving parties would be prejudiced by a proposed amendment to the pleadings, the Court may examine whether the amendment (1) would require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) would significantly delay the resolution of the dispute; or (3) would prevent the plaintiff from bringing a timely action in another jurisdiction. *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993).

■ Further, the party opposing the motion for leave to amend carries the burden of demonstrating that it will be substantially prejudiced by the amendment. *Care Envtl. Corp. v. M2 Techs. Inc.,* 05 CV 1600(CPS), 2006 WL 2265036, at *6 (E.D.N.Y. Aug. 8, 2006); *Saxholm AS v. Dynal, Inc.,* 938 F.Supp. 120, 123 (E.D.N.Y.1996). Any prejudice demonstrated "must be balanced against the court's interest in litigating all claims in a single action and any prejudice to the movant which would result from a denial of the motion." *Saxholm AS,* 938 F.Supp. at 123.

■ Here, the Court finds that "[a]llegations that [Federal] is prejudiced by the time, money, and effort expended defending a lawsuit 'do not arise to the [level of] 'substantial prejudice' necessary to deny a proposed amendment.'" *Lehman Bros.*

*Commercial Corp. v. Minmetals Int'l Non–Ferrous Metals Trading Co.*, 94 CIV. 8301(JFK), 1996 WL 346426, at *3 (S.D.N.Y. June 25, 1996), quoting *Block*, 988 F.2d at 351 (citation omitted); *accord S.S. Silberblatt, Inc. v. E. Harlem Pilot Block–Bldg. 1 Hous. Dev. Fund Co., Inc.*, 608 F.2d 28, 43 (2d Cir.1979) ("the burden of undertaking discovery, which Chemical would have shouldered had the proposed amendment been incorporated in the complaint as originally filed, hardly amounts to prejudice outweighing the policy of Rule 15(a) in favor of permitting the parties to obtain an adjudication of the merits.").

Rather, the Court finds that there would be little, if any, prejudice to either party by virtue of permitting this amendment. White Lines represents that, similar to the state court action brought by White Lines, no substantive discovery has taken place in this case. Further, there is no scheduling order that needs to be re-worked to permit the amendment nor has there been any motion practice regarding the substantive issues involved in this case.

Unable to establish prejudice, Federal points to the Policy's "No–Action Clause" which, it contends, operates to exclude a scenario where Federal must pay its own attorneys' fees in defending against a third-party's claims against EMS. This provision provides: "No person or entity shall have any right under this Policy to join [Federal] as a party to any action against any Insured to determine such Insured's liability nor shall [Federal] be impleaded by such Insured or legal representatives of such Insured." (Policy, at 13.) However, despite the broad language of this provision, White Lines, as a stranger to the Policy, is not bound by its terms. *See e.g., Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 827 (2d Cir.2006) (finding that vessel owner and vessel manager, who were not parties to the contract of charter, were not bound by its forum selection clause); *Kitz Corp. v. Transcon Shipping Specialists, Inc.*, 221 A.D.2d 261, 261, 634 N.Y.S.2d 75, 76 (1995) ("A party that is a stranger to a contract of carriage is not bound by limitations of liability in that contract"), *aff'd*, 89 N.Y.2d 822, 652 N.Y.S.2d 720, 675 N.E.2d 455 (1996).

In addition, as noted above, White Lines contends that judicial economy would be served if leave to amend were granted. As is currently the case, the issues relating to the liability of EMS to White Lines are being litigated in state court. Subsequently, issues relating to Federal's duty to indemnify under the Policy, the timing of the losses, and applicability of policy exclusions would be litigated in this forum. Rather than litigate this case in two different forums, White Lines plausibly states that judicial economy would be served if the litigation occurred in one forum.

Relying on *O'Bannon v. Friedman's, Inc.*, 437 F.Supp.2d 490 (D.Md.2006), White Lines contends that a pending case between an injured party and the insured should not be an impediment to a declaratory judgment action in federal court. In that case, the court stated:

> Plaintiffs seek a declaration of the obligations of Friedman's insurers. Such declaratory relief would undoubtedly be useful in determining the parties' legal relationship by resolving the issue of whether or not St. Paul and Federal must indemnify Friedman's for monetary relief agreed to in a settlement or awarded in litigation.
>
> · · ·
>
> As the Fourth Circuit has held with regards to insurer coverage disputes, "the fact that an injured party has not obtained a judgment against an insured party does not make the action any less definite and concrete, nor does it vitiate

the adversity of the parties' interests." *White v. Nat'l Union,* 913 F.2d at 168. 437 F.Supp. at 495–97. As this language indicates, *O'Bannon* stands for the proposition that a pending action between an injured party and the insured does not deprive (1) an injured party of standing to sue the insurer in federal court or (2) the court of subject matter jurisdiction to resolve the dispute.

 Ultimately, however, it is "within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994). In this case, despite the potential conservation of judicial resources from conducting the litigation in a single forum, the Court declines to address issues currently before the state court, particularly where the party seeking the proposed amendment, White Lines, commenced the state court action. In this regard, the Court agrees with the reasoning of the Bankruptcy Court, which also declined to consider EMS's liability to White Lines. The Bankruptcy Court found that "it would be an inappropriate use of judicial resources for th[at] Court to determine whether EMS undertook any actions or failed to undertake any actions that would render it liable to White Lines[ ], and, if so, in what amounts—those determinations will be made by the courts having jurisdiction over the Underlying Actions." 2013 WL 64755, at *8. Indeed, of importance, White Lines acknowledges that a declaration with regard to these issues would be dispositive in the case pending in New York State court.

The Court further finds that granting White Lines permission to file its cross claims would constitute an end-run around the Bankruptcy Court automatic stay, which bars White Lines from asserting claims against EMS or its bankruptcy es-tate without leave of the Bankruptcy Court. While the proposed cross claims for declaratory relief are formally asserted against the Trustee, those claims, in fact, seek a declaration of EMS's liability to White Lines, the very issue pending before the state court. The Bankruptcy Court granted limited relief from the automatic stay to litigate that question in state court, not in federal court.

The fact that the Trustee commenced this action and named White Lines as a defendant does not dictate otherwise because the automatic stay provision, 11 U.S.C. § 362(a)(1), "operates to stay prosecution of or recovery in connection with claims asserted against a debtor only, and, absent unusual circumstances, its protections are generally not extended to non-debtor codefendants." *Fed. Nat. Mortgage Ass'n v. Olympia Mortgage Corp.,* 04–CV–4971 NG MDG, 2013 WL 3168586, at *1 n. 3 (E.D.N.Y. June 21, 2013); *see also Teachers Ins. & Annuity Ass'n of Am. v. Butler,* 803 F.2d 61, 65 (2d Cir. 1986) ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants.").

### III. CONCLUSION

For the foregoing reasons, White Lines' motion to amend its answer to assert cross claims seeking a judgment against Federal declaring, among other things, that EMS is liable to White Lines for negligence in an amount in excess of $5,000,000 and that such liability falls within the ambit of the Policy, is denied.